IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TENNESSEE

EASTERN DIVISION

| | |
|---|---|
| JEFFERY WALTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Docket/Complaint #:_____ |
| ) | |
| Jobs Coordinator Jones; ) | JURY TRIAL DEMANDED |
| Business Manager Johnson; ) | |
| Asst. Warden of Programs Devers; ) | |
| Grievance Sgt. F. Johnson; ) | |
| Librarian Gray; ) | |
| Education Principal D. Bell, ) | |
| ) | |
| Defendant(s). ) | |

------------------------------------------------------------

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

UNDER 42 U.S.C. § 1983

------------------------------------------------------------

I.  JURISDICTION AND VENUE

1.  This is a civil action authorized by 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States.  The Court has jurisdiction under 28 U.S.C. § 1331 and 1343(a)(3).  Plaintiff seeks declaratory relief pursuant to 28 U.S.C § 2201 and 2202.  Plaintiff's claims for injunctive relief are authorized by 28 U.S.C. § 2283 and 2284 and Rule 65 of the Federal Rules of Civil Procedure.

2.  The Western District of Tennessee, Eastern Division, is an appropriate venue under 28 U.S.C. § 1391(b)(2) because it is where the events giving rise to this claim occurred.

## II. PLAINTIFF

3. Plaintiff, Jeffery Walton, is and was at all times mentioned herein a prisoner of the State of Tennessee in the custody of the Tennessee Department of Corrections (TDOC). He is currently confined in the Whiteville Correctional Facility (WCFA), in Whiteville, Tennessee, which is a privately owned prison with a contract to house Tennessee prisoners from the State of Tennessee.

## III. DEFENDANT(S)

4. Defendant Jobs Coordinator Jones is the Jobs Coordinator at WCFA. She is responsible for assigning inmates to various job positions in the facility, based on their skill and educational level and their ability to perform assigned job duties.

5. Defendant Business Manager Johnson is the Business Manager at WCFA. He is responsible for managing the business affairs at the facility.

6. Defendant Assistant Warden of Programs Devers is the Assistant Warden of Programs at WCFA. He is responsible for all programs offered by the facility.

7. Defendant Grievance Sgt. F. Johnson is the Grievance Officer at WCFA. She holds the rank of Sergeant. She is responsible for holding grievance hearings and determining the validity of grievances filed by prisoners at WCFA.

8. Defendant Librarian L. Gray is the Librarian at WCFA. She is responsible for all library operations at the facility.

9. Defendant Education Principal Dana Bell is the Education Principal at WCFA. She is responsible for inmates and staff in the Education Department, and she is Defendant Librarian Gray's supervisor.

10.   Jobs Coordinator Jones, Business Manager Johnson, Assistant Warden of Programs Devers, Grievance Sgt. F. Johnson, Librarian Gray, and Education Principal D. Bell all acted under color of state law when they violated Plaintiff's civil rights, and all defendants are being sued in their individual and official capacities.

### IV.   EXAUSTION OF LEGAL REMEDIES

11.   Plaintiff Jeffery Walton used the prisoners grievance procedure available at WCFA to try and solve the problems he was experiencing (See attached grievances).  On the filing dates of Plaintiff's grievances, Plaintiff presented the facts relating to this complaint.  All responses, including appeal responses, denied Plaintiff any type of adequate relief.

### V.   PREVIOUS LAWSUITS

12.   Plaintiff has not begun other lawsuits in state or federal court dealing with the same facts involved in this action or otherwise relating to his imprisonment.

### VI.   NAME AND ADDRESS OF PRESENT CONFINEMENT

13.   Whiteville Correctional Facility
c/o Jeffery Walton, #200939
1440 Union Springs Road
Post Office Box 679
Whiteville, Tennessee  38075-0679

## VII. Statement of Facts

14. On 8/10/12, Plaintiff was placed on the job roster at Whiteville Correctional Facility (hereafter WCF) for General Office Clerk, Commissary Helper, Library Assistant, and Stock Clerk (See Exhibit 1).

15. From 8/29/12 to 9/19/13, Plaintiff was assigned to work in the WCF library as a Library Assistant, which is a skilled position, until he requested a job change due to Defendant Librarian L. Gray's harassment of and unprofessional behavior towards Plaintiff (See Exhibit 2).

16. To be assigned to a skilled position at WCF, an inmate must have a high-school diploma or a GED certificate.

17. Plaintiff has a high-school diploma and meets all the criteria for being in a skilled position at WCF.

18. Inmates in skilled positions generally receive more monetary compensation than inmates in unskilled positions.

19. On 8/28/13, Plaintiff reported to the WCF Library for work, and this was his last required work day in the library prior to an institutional lockdown.

20. On 9/20/13, Plaintiff was transferred from the WCF library to the WCF Education Office by Acting Principal Ms. Taylor due to Defendant Librarian L. Gray's Harassment of and unprofessional behavior towards Plaintiff. At this time, Plaintiff's job title became "Office Clerk" (COUA-0003), which was a skilled position that paid Plaintiff 42 cents per hour (See Exhibit 3).

21. On 11/6/13, Plaintiff's previous supervisor-Defendant Librarian L. Gray-came to Plaintiff's new job site (the education office) demanding a folder containing an Inmate Book Donation Log. Defendant Gray, prior to this incident, had been instructed by Acting Principal Ms. Taylor (who was Defendant Gray and Plaintiff's supervisor at this time) to stay away from Plaintiff. By policy, Defendant Gray should have resolved any conflicts with Plaintiff through her supervisor, Acting Principal Ms. Taylor.

22. On the date and at the time specified in #21 above, Defendant Librarian L. Gray's demeanor towards Plaintiff was vindictive, hateful, and accusatory, although she had the folder she was questioning Plaintiff about in her hand.

23. Plaintiff tried to explain to Defendant Librarian L. Gray that he had no idea where the Inmate Book Donation Log might be because Plaintiff had not been in the library since 8/28/13, almost three (3) months prior to this incident. At this time, Plaintiff brought this incident to Ms. Taylor's attention and was told that she would speak to Defendant Librarian L. Gray concerning her unprofessional behavior.

24. The next morning, on 11/7/13 at 6:20 A.M., Defendant Librarian L. Gray was waiting for Plaintiff at Plaintiff's Education Office job site to give Plaintiff a "program note," which is a negative job performance institutional record. This program note accused Plaintiff of failing to complete a job assignment in the library from four months prior to this date, and almost three months after Plaintiff's last work-day in the library (See Exhibit 4). This was not proper procedure because Defendant Librarian L. Gray should have contacted Plaintiff's supervisor (Defendant Gray was no longer Plaintiff's supervisor).

25. Prior to 11/9/13, Plaintiff was allowed, by his supervisor Ms. Taylor, to stay on "out-count," which allows inmates to stay in their assigned work areas rather than going back to their housing locations during times when all WCF inmates are counted (ie. Count Time).

26. On 11/9/13, Defendant Librarian L. Gray informed Officer Chris in the Education Department that Plaintiff "was not" allowed to stay on out-count at 9:45 A.M., which "was not" Defendant Gray's job. Subsequently, Defendant Education Principal Dana Bell informed Officer Chris that Plaintiff "was allowed" to stay on out-count for training by his supervisor, Ms. Taylor.

27. On 11/10/13, Defendant Librarian L. Gray informed Officer Beauregaurd in the Education Department that Plaintiff was not allowed to stay on out-count at 9:45 A.M., which once again was not Defendant Gray's job. Again, Defendant Education Principal Dana Bell confirmed that Plaintiff was allowed to stay on out-count. This was proof of on-going harassment via Defendant Gray.

28. Prior to filing a harassment grievance against Defendant Librarian L. Gray, Plaintiff tried to resolve this matter by speaking with Defendant Grievance Sgt. F. Johnson, Supervisor Ms. Taylor, Chaplains Leak and Lain, and Defendant Education Principal Dana Bell, to bring to their attention Defendant Librarian L. Gray's ongoing harassment of and unprofessional behavior towards Plaintiff. These individuals put forth no effort to resolve this ongoing problem.

29. On 11/22/13, Defendant Grievance Sgt. F. Johnson informed Plaintiff that Defendant Librarian L. Gray's program note (#24 above) would not come off and to file a grievance if he wanted to.

30. On 11/25/13, Plaintiff filed a harassment grievance against Defendant Librarian L. Gray and her influence on other staff to assist her in continually harassing Plaintiff (See Exhibit 5).

31. On 11/25/13, Plaintiff was allowed to stay on out-count, which was the same day Plaintiff filed his grievance against Defendant Librarian L. Gray (#30 above).

32. On 11/26/13, Plaintiff's grievance was received by the grievance clerk (No. 269655/18713)(See Exhibit 5).

33. On 11/26/13, a request was made to Defendant Education Principal Dana Bell (Defendant Librarian L. Gray's supervisor) to respond to Plaintiff's grievance (See Exhibit 6).

34. On 12/2/13, Defendant Education Principal Dana Bell responded to Plaintiff's grievance. In this response, Defendant Bell confirmed that Plaintiff was allowed to remain on shift (out-count) on 11/25/13 (See #31 above), but claimed no personal knowledge concerning Defendant Librarian L. Gray's harassment of and unprofessional behavior towards Plaintiff. Additionally, Defendant Bell, now under Defendant Gray's influence, lied by alleging that Plaintiff had made false statements against Defendant Gray, and by alleging that she spoke to Ms. Taylor and Officer Beauregaurd, which never happened (See Exhibit 6).

35. On 12/6/13, Plaintiff received his response back from Defendant Grievance Sgt. F. Johnson. To avoid the issues in Plaintiff's grievance, Defendant Johnson deemed Plaintiff's grievance inappropriate per policy 501.01 VI, C, 1: Multiple Issues" being inappropriate. Conversely, the policy uses the terms "certain issues," which is completely different than the terms "multiple issues." (See Exhibit 5).

36. Due to the futility of appealing to the Commissioner based on a technical error, Plaintiff did not appeal this grievance to the Commissioner. Further, Defendant Grievance Sgt. F. Johnson misled Plaintiff by making him believe that the problem would be taken care of, where Plaintiff was trying and hoping to put this matter behind him.

37. On 2/4/14, while Defendant Librarian L. Gray was at Plaintiff's job site, Plaintiff presented legal documentation to Defendant Gray, showing that he had a 60 day, Court Ordered, legal deadline to meet. At this time, Defendant Gray gave Plaintiff a written pass for the following day, 2/5/14, but purposely denied Plaintiff the next six (6) days in the library (Plaintiff did not receive his next pass until 2/11/14). At the time of these alleged incidents, 2/4/14, it was normal library protocol to issue daily consecutive passes to inmates needing to meet legal deadlines (60 days as Court Ordered in this particular case)(See Exhibit 7).

As of 2/4/14, Plaintiff still had not exercised his right to use the legal library to avoid any contact with Defendant Librarian L. Gray, due to the fact that Defendant Gray continued to cause problems on Plaintiff's job site, and influenced other staff to do so, in retaliation to Plaintiff filing a grievance against her, and based on her overall dislike of Plaintiff for asking to be removed from her supervision, and acknowledging her unprofessional behavior to her supervisor.

38.     Defendant Librarian L. Gray's continuing harassment of Plaintiff was brought to the attention of Plaintiff's supervisor, Ms. Taylor.

39.     Despite # 38 above, nothing was done to resolve the problems due to Defendant Gray's influence over Defendant Education Principal Dana Bell, Defendant Assistant Warden of Programs Devers, and Defendant Grievance Sgt. F. Johnson and Business Manager Johnson.

40.     Inmates who have legal deadlines to meet are entitled to more time in the library than those who do not have legal deadlines to meet.  This procedure was established by Defendant Librarian L. Gray and was made known to the inmate population via Inmate TV, Channel 4 (See Exhibit 7).

41.     On 2/5/14, Plaintiff received his first library pass after giving Defendant Librarian L. Gray notice that he had a legal deadline to meet (See Exhibit 8).

42.     Six (6) days later, on Tuesday 2/11/14, Plaintiff was issued a second library pass (See Exhibit #8).

43.     On this same date, 2/11/14, Plaintiff again informed Defendant Librarian L. Gray that he needed additional library time due to his legal deadline, and Plaintiff tried to give Defendant Gray his Court Ordered paperwork, which Pellco (WCF Camera System) will show on 2/11/14 from approximately 8:45 A.M. to 9:30 A.M., but Defendant Gray would not accept Plaintiff's paperwork (See Exhibit 9).

44.     On 2/11/14, Defendant Librarian L. Gray informed Plaintiff that he would receive ten (10) consecutive passes to the library for him to complete his legal work, although the Court Ordered deadline was 60 days (with "NO" extension)(See Exhibit 9).

45.     On 2/11/14, Plaintiff filed a grievance against Defendant Librarian L. Gray for denying him access to the law library, and for denying Plaintiff use of the legal aides' assistance.  Plaintiff received his next pass on this same date, Thursday 2/13/14 (See Exhibits 8 and 10).

46.     On several dates when plaintiff did have a library pass, Defendant Librarian L. Gray influenced Assistant Librarian Ms. Chearis to hinder Plaintiff from coming into the library during his breaks from work to see legal aides.  Other similarly situated inmates; ie. other clerks, Education hall workers [Rockmen], and others were privileged to do so, resulting in disparate treatment against Plaintiff.  Defendant Gray made it impossible to see a legal aide, knowing that without their continual assistance, it would be impossible for Plaintiff to obtain needed legal documents, references, computer research, and legal assistance.  Defendant Gray's continual harassment of and unprofessional behavior towards Plaintiff when Plaintiff was trying to meet his legal deadline denied Plaintiff access to the courts and caused Plaintiff much grief and mental anguish.

47. On 2/14/14, a Grievance Response Request was sent to Defendant Librarian L. Gray's supervisor, who is Defendant Education Principal Dana Bell (See Exhibit 11), only allowing plaintiff "10 days" in the library, knowing the court's order was for 60 days.

48. On 2/20/14, Defendant Education Principal Dana Bell responded to Plaintiff's grievance, stating that Lewis v. Casey does not specify a minimum or maximum amount of library time. It "does" state, however, that an inmate can be granted additional time upon verifying the Court Ordered legal deadline, which Plaintiff was intentionally, knowingly, and wilfully denied by Defendants Bell and Gray (See Exhibit 11).

49. According to the WCF library sign-in log, other similarly situated inmates with legal deadlines did receive daily consecutive passes, thereby establishing Defendant Librarian L. Gray's disparate treatment of Plaintiff (See Exhibit 11).

50. On 2/27/14, the Grievance Committee determined that Plaintiff's issues needed further investigation, which never occurred (See Exhibit 12).

51. On 3/3/14, the Warden at WCF agreed with the proposed response of the Grievance Committee, and on 3/5/14, Plaintiff appealed this response. Once again, an investigation into this matter never occurred, on this level or on the Commissioner's level, though the Commissioner concurred that further investigation was needed (See Exhibits 12 and 13).

52. On 3/10/14, Pellco Camera System will reveal Defendant Librarian L. Gray harassing Plaintiff to the point that Plaintiff was told to leave the library due to Defendant Gray lying and alleging that Plaintiff threatened her (See Exhibit 8).

53. On 3/12/14, Plaintiff was not allowed in the library by Library Assistant Ms. Chearis, via instructions from Defendant Librarian L. Gray.

54. On 3/17/14, Plaintiff was not allowed in the library by Library Assistant Ms. Chearis, via instructions from Defendant Librarian L. Gray.

55. On 3/18/14, Plaintiff was told by Library Assistant Ms. Chearis that he could not see a legal aide, via instructions from Defendant Librarian L. Gray.

56. During Plaintiff's 60-day Court ordered deadline (from 3/11/14 to present date), Defendant Librarian L. Gray, Library Assistant Ms. Chearis, and Defendant Education Principal Dana Bell only allows Plaintiff to attend library during the last library session of the day, from 6:30 P.M. to 7:30 P.M. Other similarly situated inmates with legal deadlines were allowed to attend longer library sessions, from 6:30 A.M. to 9:30 A.M., or from 1:00 P.M. to 3:00 P.M. This denied Plaintiff his right and privilege to obtain

additional library time to meet his Court Ordered legal deadline and to obtain legal assistance from the WCF legal aides. This denial of access to the courts resulted in Plaintiff being denied Certiorari review by the Tennessee Supreme Court because he could not adequately research and brief his issues. Conversely, Plaintiff had to attach cover sheets to his attorney's previous brief due to a lack of library time, which was grossly inadequate to grant Plaintiff Certiorari review by the Tennessee Supreme Court.

57. On 3/20/14, the Deputy Commissioner of Operations concurred with the Warden's Response (See #51 above).

58. On 3/20/14, Defendant Education Principal Dana Bell requested a program dismissal for Plaintiff, alleging that Plaintiff's presence in the education department was detrimental due to conflicts with staff and inmates, because Plaintiff grieves Defendant Librarian L. Gray consistently, and because Plaintiff causes strife between education staff (See Exhibit 14). This job dismissal was a direct result of Plaintiff exercising his legal right to file grievances and was retaliation by Defendants Librarian L. Gray and Education Principal Dana Bell, which violated TDOC Policy 501.01, CCA policy and procedure, and the United States Constitution. This retaliatory job dismissal was administered and/or approved by Defendants Librarian L. Gray, Education Principal Dana Bell, Assistant Warden of Programs Devers, Grievance Sgt. F. Johnson, Jobs Coordinator Jones, and Business Manager Johnson, all CCA employees, and all defendants knew that they were violating Plaintiff's constitutional rights when such a decision was made and approved by all named defendants.

59. On 3/24/14, Ms. Dana Bell's job dismissal request was approved by Assistant Warden Devers and Jobs Coordinator Jones, despite it being a direct violation of Policies 501.01 and 505.07, as well as Plaintiff's constitutional rights (See Exhibit 14).

60. On 3/28/14, Plaintiff filed a grievance concerning the retaliation in #58 above for using the grievance procedure against Defendant Librarian L. Gray, and for speculative, unfounded allegations and "lies" purported by Defendants Education Principal Dana Bell and Assistant Warden of Programs Devers (See Exhibit 15).

61. Based on TDOC policies 501.01 and 505.07, retaliation against Plaintiff for filing grievances was prohibited. Furthermore, as revealed by TDOC Policy 505.07, any strife or conflict caused by Plaintiff should have been documented and action should have been taken at that time to resolve the problem, which did not happen in this particular case (See Policy 505.07, which requires documentation of the problem and the attempt to correct it).

62. On 4/16/14, Plaintiff received a Grievance Pass, but Plaintiff's grievance hearing had to be continued due to Defendant Grievance Sgt. F. Johnson alleging that Grievance Clerk Inmate John Parker failed to inform Defendant Johnson that Plaintiff wanted to call witnesses during the hearing. This Grievance Hearing was rescheduled for 4/24/14.

63. On 4/24/14, Plaintiff received a grievance pass and had a grievance hearing, where no witnesses were present, contacted

10

or allowed due to the fault of Defendant Grievance Sgt. F. Johnson, to conspire with other staff in retaliation, thereby violating Plaintiff's due process rights under U.S. Const. Am. 14.

64. On 4/28/14, Plaintiff was assigned to a job as a Stock Clerk under Units F and J Unit Manager Hale, although the grievance issues pertaining to Plaintiff's previous job drop had not yet been resolved (See Exhibit 16).

65. During this time period (#64 above), an ineffective "PREA" investigation had been conducted by I.A. Shield, supposedly to determine why Defendant Librarian L. Gray continually left her library job site to harass Plaintiff in the Education Office and to influence other staff to do the same, including Defendants Assistant Warden of Programs Devers, Education Principal Dana Bell, Grievance Sgt. F. Johnson, and Jobs Coordinator Jones.

66. On 4/29/14 at approximately 7:30 A.M. to 8:30 A.M. while Plaintiff was reporting to work, Defendant Librarian L. Gray came on Plaintiff's new job site to continue her harassment of Plaintiff in the J-Unit Counselor's Office (verified by Pellco Camera System, 4/29/14, J-Unit Hallway). Plaintiff's supervisor, Unit Manager Hale, instructed Plaintiff to work with the counselors in the J-Unit counselor's office. Defendant Gray attempted to get the staff in the counselor's office to assist her in harassing Plaintiff, although she was instructed by Internal Affairs to stay away from Plaintiff and Plaintiff was instructed to stay away from her.

67. On 6/13/14, after working for several weeks with no complaints from 4/29/14 to 6/13/14, Plaintiff was told by Unit Manager Supervisor Mintor/Polk that Plaintiff could no longer work in the counselor's office. However, Pellco Camera System will verify that other similarly situated inmates, including hallway rock men and other inmates who were not assigned were allowed to work in the counselor's office doing the exact job Plaintiff was doing, even until this present date.

68. Even though #67 above resulted in discrimination against and disparate treatment of Plaintiff, Pellco Camera system will show the Plaintiff walking to the jobs office with Unit Manager Supervisor Mintor/Polk to see if he could be placed on another skilled job, which jobs clerk Ms. Nobles did because Plaintiff met the requirements and was qualified. Also, Ms. Nobles was aware of the on-going situation Plaintiff was dealing with. Consequently, on this same date, 6/13/14, Plaintiff was assigned to be a Commissary Helper (COMH-0006), to begin on 6/16/14 (see Exhibit #17).

69. Plaintiff sought a new job to avoid any more harassment, unprofessional behavior, and retaliation from Defendant Librarian L. Gray and others under her influence.

70. On 6/14/14, while Plaintiff was on his way from the chow hall, Plaintiff noticed Defendant Business Manager Johnson in the J-Unit search desk. Being aware of Defendant Johnson's personal relationship with Defendant Librarian L. Gray (while Plaintiff worked in the library) and him being over the Commissary Department, Plaintiff informed Defendant Johnson that Plaintiff had been placed in the Commissary Department as a helper, and Defendant Johnson displayed his approval to Plaintiff's Commissary position at this time. However, Defendant Johnson's acquiescence to Plaintiff's commissary position was directly contrary to his response to Plaintiff's subsequent grievance (#74 and 75 below).

71. On 6/16/14, while Plaintiff was reporting to work in Commissary, the Commissary Supervisor (Ms. Patterson) told Plaintiff that he could not come to work and she did not know what was going on. The WCF Pellco Camera System will show Defendant Business Manager Johnson walking away from the Commissary Department right before this happened (6/16/14, between 7:30 A.M. and 8:00 A.M.).

72. Between 6/13/14 and 6/25/14, Defendant Jobs Coordinator Jones took an inmate (Nacho) from working stock clerk position in F-Unit and placed him in the Commissary position where Plaintiff was to be assigned, in conspiracy with Business Manager Johnson, and also filled Plaintiff's previous stock-clerk position, which precluded Plaintiff from going back to work as a stock clerk. Defendant Jones alleged that she needed to speak with Unit Manager Hale before reassigning Plaintiff, which deprived Plaintiff of his job, and to support Defendant Johnson's unprofessional activities and retaliation, which violated their oaths as CCA employees, as well as Plaintiff's rights as an inmate. According to the Inmate Handbook:

> Inmates have the "Right" to expect that as a human being, they will be treated (1) Respectfully; (2) Impartially; and (3) Fairly by "all" Department personnel. This is each CCA employee's oath to uphold.

73. On 6/16/14, after Plaintiff left commissary (#71 above), Plaintiff went to see Defendant Jobs Coordinator Jones about these issues, just to be rudely told by Defendant Jones that she had terminated Plaintiff and that she did not have to give any explanation (See Exhibit #18).

74. On 7/2/14, after exhausting all other available remedies, Plaintiff filed a grievance (asserting ongoing retaliation, unprofessional activities and behavior, violations of TDOC and CCA Policies, and violation of their CCA oath) against Unit Manager Polk, Defendant Business Manager Johnson, and Defendant Jobs Coordinator Jones (See Exhibit 19).

75. On 7/7/14, Defendant Jobs Coordinator Jones responded to Plaintiff's grievance, indicating that it was Defendant Business Manager Johnson who deprived Plaintiff of the Commissary job, not Plaintiff being assigned in error as alleged in the 6/16/14 job termination decision, where Defendant Jobs Coordinator Jones alleged that Plaintiff had not been interviewed (See Exhibits 18 and 20).

76. On 8/5/14, Plaintiff was assigned as a Medical Incentive Rock Man by Defendant Jobs Coordinator Jones without Plaintiff's knowledge, which is an unskilled job and which sanctioned Plaintiff via retaliation by reducing Plaintiff's hourly and monthly pay. This was direct retaliation by Jobs Coordinator Jones to stop Plaintiff from getting his raise that the Plaintiff would have been "eligible" for on 8/29/14 and for filing a grievance against her (Plaintiff went from making 42 cents per hour as a stock clerk to making 34 cents per hour as a medical incentive, and plaintiff was deprived his raise to 50 cents per hour on 8/29/14)(See Exhibit 21).

On 8/29/14, Plaintiff was eligible for a raise but did not receive one due to his job drops. WCF job-related records will show that Plaintiff has not violated any policies, procedures, or regulations of WCF and has never breached the requirements to be placed in a skilled position.

77. Plaintiff avers that he is a victim of ongoing harassment, unprofessional behavior, and retaliation by Defendant Librarian L. Gray.

78. Records from Defendant Gray's previous employers and her background check will establish that Defendant Gray was fired from CCA's Hardeman County Facility (which is right next door to WCF) for similar activities, etc.

79. Defendant Librarian L. Gray has developed a negative relationship with a multiplicity of inmates and staff at WCF and HCC prisons due to her continual spiteful and hateful attitude and demeanor towards them. This has created a "custom" or "pattern" of harassment by Defendant Gray towards inmates and staff alike.

80. Defendant Librarian L. Gray's influence on other staff members (ie. close friends, family members, nieces, nephews, cousins, etc.) that work at WCF--from Administration officers to the housing coordinator and several C/O's--has resulted in these other staff members assisting Defendant Gray in knowingly and willingly participating in violating Plaintiff's Civil rights, as well as TDOC and CCA Policies and the Oath they took as CCA/WCF employees.

81. On 9/8/14, Plaintiff received the Commissioner's response to his grievance, where the Assistant Program Manager (Nashville) did not concur with the Grievance Committee's response (See Exhibit 22). Asst. Program Manager unequivocally acknowledged that the issues at bar "were not" Plaintiff's fault and that Plaintiff has done "nothing" to cause the "ongoing unprofessional activities" perpetrated by Administrative and Staff Members, including Defendants A/W Devers, Education Principal Dana Bell, Grievance Sgt. F. Johnson, Business Manager Johnson, Jobs Coordinator Jones, Librarian L. Gray, and any others involved.

82.  Nevertheless, despite Commissioner's Assistant Program Manager's response (#81 above), by not addressing the heart of the problem and failing to take corrective measures to resolve the problems, Assistant Program Manager has acquiesced to Plaintiff (a) being harassed continually; (b) being discriminated against, (c) enduring defamation of character via constant lies; and (d) losing wages and behavior credits over the course of months that Plaintiff has missed work, via an unconstitutional sanction in retaliation to Plaintiff filing his grievances.

83.  In support of #82 above, Commissioner's Assistant Program Manager never took any corrective measures after finding all other defendants at fault, failed to administer any punishment to the named defendants, and failed to remove any of the defendants from their job positions, where they were knowingly and willingly abusing their positions and influencing others, via their authority or otherwise, to do the same.  Further, Assistant Program Manager failed to take into consideration that Plaintiff has been working in a skilled position since 2007, as a Clerk, which "was" light duty and did not require any lifting or any other labor to violate Plaintiff's Medical Incentive.

## VIII.  Legal Claims

84.  Plaintiff realleges and incorporates by reference paragraphs 1-83.

85.  The following defendants were directly involved in causing Plaintiff's injuries and violating Plaintiff's constitutional rights via the facts outlined below:

A.  Jobs Coordinator Jones: Facts 58, 65 72, 73, 75, 76, 77
B.  Business Manager Johnson: Facts 58, 70, 71, 74, 75
C.  Assistant Warden of Programs Devers: Facts 39, 58, 65
D.  Grievance Sgt. F. Johnson: Facts 28, 29, 35, 36, 39, 58, 62, 63, 65
E.  Librarian L. Gray: Facts 15, 20, 21, 22, 24, 26, 27, 37, 38, 39, 42, 43, 44, 45, 46, 49, 52, 53, 54, 55, 56, 58, 65, 66, 78, 79, 80
F.  Education Principal Dana Bell: Facts 28, 34, 39, 48, 56, 58, 59, 65

86.  Each named defendant caused the following injuries to Plaintiff:

A.  Extreme, more than "de minimus" mental anguish based on each named defendant's retaliation against and harassment of Plaintiff, which still continues to this day.
B.  This retaliation and harassment was sufficiently severe or pervasive as to alter the conditions of Plaintiff's employment and to create an abusive working environment.
C.  The deprivation of Plaintiff's right to file an adequate Certiorari Brief to the Tennessee Supreme Court (Denial of Access to the Courts).

14

    D.     Defamation of Plaintiff's character among WCF employees, as well as among WCF inmates.
    E.     Verbal abuse against Plaintiff, harassment of Plaintiff, arbitrariness in dealing with Plaintiff and his job position, and unconstitutional conditions of confinement, resulting in cruel and unusual punishment and wanton infliction of pain that was unnecessary in violation of U.S. Const. Am. 8 and 14.

87.    Each named defendant failed to act in a way that would resolve the problems Plaintiff was having with Defendant Librarian L. Gray, retaliated against Plaintiff after he filed grievances, and denied him his constitutional rights to free speech, access to courts, to not be cruely and unusually punished, and to be afforded due process under U.S. Const. Am. 1, 8, and 14.

88.    Each defendant (other than Defendant Gray) failed to supervise, control, or train Defendant Librarian L. Gray, and/or either encouraged the specific incidents of Defendant Gray's misconduct or in some other way directly participated in it. Further, each defendant (other than Defendant Gray) implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of Defendant Librarian L. Gray.

89.    Plaintiff, when he filed his grievances, was engaged in protected conduct under U.S. Const. Am. 1 (See Herron v. Harrison, 203 F.3d 410, 415 (6th Cir. 2000).

90.    The retaliation against Plaintiff for filing his grievances, the continuous harassment of Plaintiff, and the loss of Plaintiff's skilled job and lower pay were all adverse actions by each named defendant that were taken against Plaintiff, which would deter a prisoner of ordinary firmness from continuing to engage in his constitutional right to file grievances.

91.    For each named defendant, there was a causal connection between the facts stated in #'s 89 and 90 above, and Plaintiff's conduct of filing his grievances motivated the adverse actions of each defendant. Each defendant's intent was to retaliate against Plaintiff for exercising his right to file grievances.

92.    But for the retaliatory motive of each named defendant, the injuries stated in #86 above would not have occurred.

93.    The penalties that Plaintiff received were grossly disproportionate to Plaintiff exercising his right to use the grievance procedure and redress his grievances. Such penalties transgressed today's broad and idealistic concepts of dignity, civilized standards, humanity and decency.

94.    Plaintiff's injuries were sufficiently serious and resulted in the denial of the minimal civilized measure of life's necessities. Plaintiff had the right to not be subjected to the unreasonable

threat of injury and to cruel and unusual punishments.

95.  Each named defendant's conduct was wanton.

96.  The Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs described herein. Plaintiff has been and will continue to be irreparably injured by the conduct of the defendants unless this court grants the declaratory and injunctive relief which Plaintiff seeks.

### IX. Prayer For Relief

WHEREFORE, Plaintiff respectfully prays that this court enter judgment granting plaintiff:

97.  A declaration that the acts and omissions described herein violated Plaintiff's rights under the Constitution and laws of the United States.

98.  A preliminary and permanent injunction ordering all defendants to stop harassing and conspiring to do harm to Plaintiff.

99.  Compensatory damages in the amount of $1500.00.

100. Punitive damages in the amount of $150,000.00.

101. Damages in 99 and 100 above to be granted jointly and severally.

102. A jury trial on all issues triable by jury.

103. Plaintiff's costs in this suit.

104. Any additional relief this court deems just, proper, and equitable.

Dated: 10/27/14

Respectfully submitted,

*Jeffery Walton*
Jeffery Walton, #200939
Whiteville Correctional Facility
1440 Union Springs Road
P.O. Box 679
Whiteville, TN 38075

## X. Verification

I, Jeffery Walton, have read the foregoing complaint and hereby verify that the matters alleged therein are true to the best of my knowledge, information and belief. I certify under penalty of perjury that the foregoing is true and correct.

Executed at Whiteville, Tennessee on  10/27/14

_____
Jeffery Walton, #200939