UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| JEFFERY WALTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 14-1299-JDT-egb |
| | ) | |
| JENATTA JONES, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER DENYING MOTION FOR DEFAULT JUDGMENT,
DISMISSING COMPLAINT AND GRANTING LEAVE TO AMEND

On October 29, 2014, Plaintiff Jeffery Walton ("Walton"), an inmate at the Whiteville Correctional Facility ("WCF") in Whiteville, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 accompanied by a motion to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) In an order issued October 30, 2014, the Court granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 4.) The Clerk shall record the Defendants as WCF Jobs Coordinator Jenatta Jones; WCF Business Manager First Name Unknown ("FNU") Johnson; WCF Assistant Warden of Programs FNU Devers; WCF Grievance Sergeant ("Sgt.") F. Johnson; WCF Librarian Yolanda Gray; and WCF Education Prinicipal Dana Bell.

On June 4, 2015, Walton filed a motion for a default judgment. (ECF No. 7.) That motion is DENIED. The Defendants are not in default because they have not been served with process. Pursuant to 28 U.S.C. §1915A and Local Rule 4.1(b)(3), all civil cases brought by prisoners acting *pro se* are screened, and no process will be served in the case unless the Court

orders such service. In this case, all claims are being dismissed *sua sponte*; therefore, the motion for default judgment is rendered moot.

## I. The Complaint

Walton claims that the Defendants caused him mental anguish because of their retaliation and harassment, caused alterations to the conditions of his employment, deprived him of access to the courts, defamed his character, and were verbally abusive. (ECF No. 1 at 13-14.) Additionally, Defendants allegedly failed to properly investigate grievances and, other than Defendant Gray, failed to properly supervise, control or train Defendant Gray. (*Id.* at 14.)

Walton's allegations stem from his interactions with Defendant Gray. From August 2012 to September 2013, Walton worked in the WCF library as a library assistant. (*Id.* at 4, ¶ 15.) The position of library assistant is a skilled position requiring an inmate to have a high school diploma or GED, and those inmates in skilled positions usually receive higher pay. (*Id.* ¶¶ 16-18.) On September 20, 2013, Walton was transferred from his position as library assistant to a position as office clerk by Ms. Taylor, who is not a party to this lawsuit, due to Defendant Gray's "harassment of and unprofessional behavior towards Plaintiff." (*Id.* ¶ 20.) In an attempt to resolve his issues with Defendant Gray, Walton spoke to Defendants Sgt. F. Johnson and Bell as well as parties not named in this lawsuit. (*Id.* at 5, ¶ 28.) None of the individuals resolved the problem; however, Defendant Sgt. F. Johnson told Walton he could file a grievance. (*Id.* ¶ 29.) Walton filed a grievance against Defendant Gray on November 25, 2013. (*Id.* ¶ 30; *see also* Ex. 5, ECF No. 1-1 at PageID 21-24.) Defendant Bell responded to the grievance claiming no knowledge of Defendant Gray's behavior and, "lied by alleging that Plaintiff has made false statements against Defendant Gray." (ECF No 1 at 6, ¶ 34; *see also* Ex. 6, ECF No. 1-1 at PageID 25.)

Walton contends that Defendant Gray's continued harassment towards him led to a denial of library access. On February 4, 2014, Walton informed Defendant Gray that he had a 60-day deadline in which to file legal paperwork. (ECF No. 1 at 6, ¶ 37.) In response, Defendant Gray issued Walton a single library pass for the following day, but did not issue him another pass until February 11, 2014. (*Id.* at 6-7, ¶¶ 37, 41-42.) On February 11, 2014, Defendant Gray issued Walton ten consecutive passes to the library. (*Id.* at 7, ¶ 44.) Walton filed another grievance against Defendant Gray for denying him access to the law library and access to the legal aides for assistance. (*Id.* ¶ 45; *see also* Ex. 10, ECF No. 1-1 at PageID 29-30.) Even when he was allowed a library pass, Walton contends that Defendant Gray influenced others to make it impossible for him to see a legal aide, even though other inmates were allowed to do so. (ECF No 1 at 7, ¶ 46.)

Walton further contends that on March 10, 2014, he was told to leave the library because Defendant Gray lied and said that Walton had threatened her. (*Id.* at 8, ¶ 52.) On March 12, 17, and 18, 2014, Walton was not allowed access to the library by Defendant Gray. (*Id.* ¶¶ 53-55.) Further, beginning March 11, 2014, on the days he was allowed in the library Walton was only allowed to attend for the last session of the day, which was one hour, versus other sessions of the day that lasted two to three hours. (*Id.* at 8-9, ¶ 56.) Walton alleges that as a result of the continued denial of access to the library, he was denied permission to appeal by the Tennessee Supreme Court. (*Id.* at 9, ¶ 56.)

On March 20, 2014, Defendant Bell requested a program (job) dismissal for Walton due to his conflicts with staff and inmates, constant grieving of Defendant Gray, and because he caused strife between the education staff. (*Id.* ¶ 58.) Walton filed a grievance contending that this job dismissal was retaliation by Defendants Bell and Gray and was administered and/or

approved by all named Defendants. (*Id.* ¶¶ 58-60; *see also* Ex 15, ECF No. 1-1 at PageID 36-37.) A hearing on the grievance was held on April 24, 2014, at which there were no witnesses due to Defendant Johnson's conspiring with other staff to retaliate against Walton, thus allegedly violating Walton's right to due process. (ECF No. 1 at 9-10, ¶ 63.)

On April 29, 2014, Defendant Gray allegedly came to Walton's job site to harass him while he was working, at his supervisor's direction, in the J-Unit Counselor's Office, even though Gray had been instructed by Internal Affairs to stay away from Walton. (*Id.* at 10, ¶ 66.) After working for several weeks with no complaints, Walton was told by a Unit Manager Supervisor on June 13, 2014, that he could no longer work in the Counselor's Office, even though other inmates were allowed to do so; however, Walton was assigned a new skilled job as a commissary helper on the same date. (*Id.* ¶¶ 67-68.) On June 14, 2014, Walton informed Defendant Johnson of his new job as a commissary helper, and Johnson expressed his approval. (*Id.* at 11, ¶ 70.) However, on the same date, Walton was informed by the Commissary Supervisor, Ms. Patterson, who is not a party to this lawsuit, that he could not come to work. (*Id.* ¶ 71.)

During the period from June 13, 2014 to June 25, 2014, Defendant Jones allegedly conspired with Defendant Johnson to place another inmate in the commissary helper position and also filled Walton's previous position, thus depriving Walton of any employment in relatiation for his previous grievances. (*Id.* ¶ 72; *see also* Ex. 19, ECF No. 1-1 at PageID 41-43.) Defendant Jones, responding to the grievance Walton subsequently filed, stated that it was Defendant Johnson who deprived Walton of the commissary position. (ECF No. 1 at 11, ¶ 75; *see also* Ex. 20, ECF No. 1-1 at PageID 44.) On August 5, 2014, Defendant Jones assigned

Walton to an unskilled position allegedly in retaliation for the grievance he filed, which prevented Walton from being eligible for a raise. (ECF No. 1 at 12, ¶ 76.)

Walton seeks a preliminary and permanent injunction from harassment as well as compensatory and punitive damages. (*Id.* at 15.)

## II. Analysis

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the court applies the standards under Federal Rules of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681) (alteration in original). "[P]leadings that . . . are no more than conclusions . . . are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could

satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally. Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted." *Hill*, 630 F.3d at 470 (citing *Neitzke v. Williams*, 490 U.S. 319, 325, 328-29 (1989)).

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief. Statutes allowing a complaint to be dismissed as frivolous give "judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327, 109 S. Ct. 1827 (interpreting 28 U.S.C. § 1915). Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, *Iqbal*, 129 S. Ct. at 1949-50, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness. *Neitzke*, 490 U.S. at 327-28, 109 S. Ct. 1827.

*Id.* at 471.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants and prisoners are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, No. 09-2259, 2011 WL 285251, at *5 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)) (alteration in original); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's

claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

Walton filed his 16-page, typed complaint under 42 U.S.C. § 1983. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

Walton alleges that because he was not allowed adequate access to the law library, he was denied permission to appeal by the Tennessee Supreme Court. The Court construes these allegations as a court access claim. It is true that a prisoner has the right, protected by the First

7

Amendment, "to petition the Government for a redress of grievances." The scope of this right in relation to prisoners has been enunciated in *Bounds v. Smith*, 430 U.S. 817 (1977), and its progeny. According to that body of caselaw, the scope of this right for prisoners is limited. The Sixth Circuit has previously held that the right of access to the courts requires affirmative assistance for inmates "only in the preparation of legal papers in cases involving constitutional rights and other civil rights actions related to their incarceration." *Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992) (emphasis added). *See also John L. v. Adams*, 969 F.2d 228, 236 (6th Cir. 1992).

> This view was subsequently adopted by the United States Supreme Court:
>
> > *Boun*ds does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U.S. 343, 355 (1996). The Court declared that no claim exists under *Bounds* without an actual injury. Inmates must have sought "to file *nonfrivolous* legal claims challenging their convictions or conditions of confinement." *Id.* at 356 (emphasis added). No actual injury occurs without a showing that such a claim "has been lost or rejected, or that the presentation of such a claim is currently being prevented." *Id.* As recognized even before *Lewis*, "[w]e are concerned with a right of access to the courts, not necessarily to a prison law library." *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985).

Here, Walton fails to provide any details concerning the legal claim for which he sought review. Moreover, the Tennessee Supreme Court's decision to grant permission to appeal in

8

non-capital cases is entirely discretionary. Pursuant to Rule 11(a) of the Tennessee Rules of Appellate Procedure:

> [T]he following, while neither controlling nor fully measuring the court's discretion, indicate the character of reasons that will be considered: (1) the need to secure uniformity of decision, (2) the need to secure settlement of important questions of law, (3) the need to secure settlement of questions of public interest, and (4) the need for the exercise of the Supreme Court's supervisory authority.

Because Walton has not shown any likelihood that the Tennessee Supreme Court would have granted permission to appeal, he has not sufficiently alleged that a nonfrivolous legal claim was lost or rejected. *See Shehee v. Grimes*, 39 F. App'x 127, 129 (6th Cir. 2002) (affirming dismissal of claim arising from interference with prisoner's petition for a writ of certiorari).

Walton's claims of verbal abuse arise under the Eighth Amendment, which prohibits cruel and unusual punishments. *See generally Wilson v. Seiter*, 501 U.S. 294 (1991). An Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson*, 501 U.S. at 298; *Williams v. Curtin*, 631 F.3d at 383; *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010). The objective component requires that the deprivation be "sufficiently serious." *Farmer*, 511 U.S. at 834; *Hudson*, 503 U.S. at 8; *Wilson*, 501 U.S. at 298.

To satisfy the objective component of an Eighth Amendment claim, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm," *Farmer*, 511 U.S. at 834; *see also Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005), or that he has been deprived of the "'minimal civilized measure of life's necessities,'" *Wilson*, 501 U.S. at 298 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)); *see also Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004). The Constitution "'does not mandate comfortable prisons.'" *Wilson*, 501 U.S. at 298 (quoting *Rhodes*, 452 U.S. at 349). "[R]outine discomfort 'is part of the penalty

that criminal offenders pay for their offenses against society.'" *Hudson*, 503 U.S. at 9 (quoting *Rhodes*, 452 U.S. at 347). Thus, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

Defendant Gray's disrespectful statements do not satisfy the objective component of an Eighth Amendment claim. *See, e.g., Pasley v. Conerly*, 345 F. App'x 981, 984 (6th Cir. 2009); *Jones Bey v. Johnson*, 248 F. App'x 675, 677-78 (6th Cir. 2007) (no Eighth Amendment claim for prison guard's "use of racial slurs and other derogatory language"); *Miller v. Wertanen*, 109 F. App'x 64, 65 (6th Cir. 2004) (a guard's verbal threat to sexually assault an inmate "was not punishment that violated [the prisoner's] constitutional rights"); *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) ("harassment and verbal abuse . . . do not constitute the type of infliction of pain that the Eighth Amendment prohibits"); *Johnson v. Moore*, 7 F. App'x 382, 384 (6th Cir. 2001) ("Allegations of verbal harassment and verbal abuse by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment. Nor do allegations of verbal harassment rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." (citation omitted)); *Owens v. Johnson*, No. 99-2094, 2000 WL 876766, at *2 (6th Cir. June 23, 2000) ("The occasional or sporadic use of racial slurs, although unprofessional and reprehensible, does not rise to a level of constitutional magnitude. The petty exchanges of insults between a prisoner and guard do not amount to constitutional torts." (citation omitted)); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) (per curiam) (holding that verbal abuse or harassment does not constitute punishment under the Eighth Amendment); *Miles v. Tchrozynski*, No. 2:09-CV-11192, 2009 WL 960510, at *1 (E.D. Mich. Apr. 7, 2009) ("Even verbal threats by a corrections officer to assault an inmate do not violate an

inmate's Eighth Amendment rights. Verbal threats and abuse made in retaliation for filing grievances are likewise not actionable." (citation omitted)).

Walton has alleged that the Defendants retaliated against him for the filing of grievances. "Retaliation on the basis of a prisoner's exercise of his First Amendment rights violates the Constitution." *Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005).

> A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc); *see also Scott v. Churchill*, 377 F.3d 565, 569 (6th Cir. 2004) (same); *Smith v. Campbell*, 250 F.3d 1032, 1036 (6th Cir. 2001) (same). "If the plaintiff is able to make such a showing, the defendant then has the burden of showing that the same action would have been taken even absent the plaintiff's protected conduct." *Smith*, 250 F.3d at 1037.

The filing of a non-frivolous grievance is protected conduct under the First Amendment. *Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) ("An inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf."). A grievance is frivolous if it complains of conduct that is not legally actionable. *Herron*, 203 F.3d at 415 ("Herron's pursuit of legal claims against [prison] officials . . . was protected conduct only to the extent that the underlying claims had merit."); *see Jackson v. Kronberg*, 111 F. App'x 815, 819 (6th Cir. 2004) (grievance that corrections officer has a spider-web tattoo that serves as an "Aryan Nation symbol" not grievable so the filing of the grievance is not protected conduct); *Ziegler v. State of Mich.*, 90 F. App'x 808, 810 (6th Cir. 2004); *Henley v. Pitcher*, 20 F. App'x 396, 397 (6th Cir. 2001); *cf. Smith v.*

11

*Craven*, 61 F. App'x 159, 162 (6th Cir. 2003) (inmate did not engage in protected conduct by litigating loss of property claim against prison in state court because such a claim is not encompassed within an inmate's First Amendment rights).

Walton's first grievance against Defendant Gray complained of her "verbal harassment." (ECF No. 1 at 5.) His second grievance against Gray complained that she denied him access to the law library and to legal aides. (*Id.* at 7.) As previously discussed, Walton has no cognizable claim against Defendant Gray for verbal abuse and no valid claim for denial of access to the courts. Thus, the filing of these grievances does not constitute protected conduct under the First Amendment.

Even if the grievances were protected conduct, however, Walton has not alleged that an "adverse action" was taken against him. Walton alleges that Defendants Bell, Jones and Business Manager Johnson caused him to lose or be demoted from a higher-paying prison job in retaliation for filing his grievances against Gray. (*Id.* at 9, 11.) The Sixth Circuit has indirectly suggested that in some limited circumstances, the loss of a prison job may be sufficiently adverse to deter a person of ordinary firmness from continuing to engage in the protected conduct. *See, e.g., Siggers-El v. Barlow*, 412 F.3d 693, 702 (6th Cir. 2005) (transfer to another prison was an "adverse action" where it resulted in the prisoner's losing a high-paying prison job that paid for his attorney fees); *King v. Zamiara*, 150 F. App'x 485, 494 (6th Cir. 2005) (prison transfer which "did not deprive [the prisoner] . . . from prison employment that allowed [him] to pay for an attorney" was not an adverse action). However, in *Jewell v. Leroux*, 20 F. App'x 375 (6th Cir. 2001), the Sixth Circuit, after citing *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989), for the proposition that prisoners do not have a constitutional right to prison employment, found that a transfer resulting in the loss of a prison job was not an adverse action. *Jewell*, 20 F. App'x at

12

377. *See also Bailey v. Ingram*, No. 5:14-279, 2014 WL 5431300, at *5 (W.D. Ky. Oct. 24, 2014) (stating "the removal of a prisoner from his prison job has generally been held not to constitute 'adverse action' under the retaliation analysis," citing *Jewell*); *Davis v. Walton*, No. 1:12-cv-258, 2014 WL 320206, at *8 (W.D. Mich. Jan. 29, 2014) ("It trivializes the concept of First Amendment retaliation . . . to allow dissatisfaction over a prison work detail to qualify as an adverse action sufficient to support a constitutional tort.").

In this case, Walton does not allege that being placed in a lesser-paying job resulted in him being unable to pay his attorney or that it was anything other than annoying and unpleasant. Further, there is nothing in the complaint suggesting that the Defendants' alleged retaliatory actions deterred Walton from writing other grievances. Therefore, Walton does not have a valid retaliation claim against the Defendants.

Defendants Devers and Bell appear to have been sued only as supervisors. Under 42 U.S.C. § 1983, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Ashcroft v. Iqbal*, 556 U.S. at 676; *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own official actions, violated the Constitution." *Iqbal*, 556 U.S. at 676.

> There must be a showing that the supervisor encouraged the specific instance of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates.

*Bellamy*, 729 F.2d at 421 (citation omitted). A supervisory official who is aware of the unconstitutional conduct of his or her subordinates, but fails to act, generally cannot be held liable in his or her individual capacity. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008);

*Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 727-28 (6th Cir. 1996); *see also George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not."). The complaint does not allege that Defendants Devers and Bell, through their own actions, violated Walton's rights.

More specifically, the participation of Defendants Bell and Devers, as well as Defendants Jones, Business Manager Johnson and Sgt. Johnson, in investigating, processing, or denying Walton's grievances cannot constitute sufficient personal involvement to state a claim of constitutional dimension. *Simpson v. Overton*, 79 F. App'x. 117, 2003 WL 22435653 (6th Cir. 2003); *see also Martin v. Harvey*, 14 F. App'x. 307, 2001 WL 669983, at *2 (6th Cir. 2001) ("The denial of the grievance is not the same as the denial of a request to receive medical care."). Section 1983 liability may not be imposed against a defendant for "a mere failure to act" based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d at 300; *Lillard*, 76 F.3d at 727-28.

Similarly, Walton also has no cause of action against the Defendants for failing to investigate or take remedial measures to the extent they were aware of his grievances or complaints. Although failure to investigate may give rise to § 1983 supervisory liability, *see Walker v. Norris*, 917 F.2d 1449, 1457 (6th Cir. 1990) and *Marchese v. Lucas*, 758 F.2d 181, 188 (6th Cir. 1985), the reasoning in *Walker* and the analysis in its progeny teach that evidence of a failure to investigate can establish municipal liability only. In *Dyer v. Casey*, No. 94-5780, 1995

WL 712765, at *2 (6th Cir. Dec. 4, 1995), the Court stated that "the theory underlying [*Marchese*] is that the municipality's failure to investigate or discipline amounts to a 'ratification' of the officer's conduct."

In *Walker*, the Sixth Circuit distinguished *Marchese* because the Court "imposed the broad investigative responsibilities outlined in Marchese upon the Sheriff in his official capacity." *Walker*, 917 F.2d at 1457 ("The Sheriff is sued here in his official capacity and in that capacity, he had a duty to both know and act."). In 1998, the Sixth Circuit affirmed the dismissal of a claim of supervisory liability based on the "failure to investigate," stating:

> Young's claim against defendants McAninch and Goff is based solely on their alleged failure to investigate defendant Ward's behavior towards Young. Although Young stated that defendants McAninch and Goff had knowledge of his allegations against defendant Ward, this is insufficient to meet the standard that they either condoned, encouraged or knowingly acquiesced in the misconduct.

*Young v. Ward*, No. 97-3043, 1998 WL 384564, at *1 (6th Cir. June 18, 1998). Therefore, Walton has no claim against any Defendants Jones, Business Manager Johnson, Sgt. Johnson, Bell and Devers for failing to take corrective action in response to his grievances and complaints.

For all of the foregoing reasons, Walton's complaint is subject to dismissal in its entirety for failure to state a claim on which relief can be granted.

### III. Leave to Amend

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, No. 12-1403, 2013 WL 646489, at *1 (1st Cir. Feb. 22, 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Brown*, 2013 WL 646489, at

*1; *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every *sua sponte* dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile, then a *sua sponte* dismissal may stand."); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) ("*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile"); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). In this case, the Court cannot conclude that any amendment to Walton's claims would be futile as a matter of law.

IV. Conclusion

The Court DISMISSES Walton's complaint for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). However, leave to amend is GRANTED. Any amended complaint must be filed within thirty (30) days after the date of this order. Walton is advised that an amended complaint will supersede the original pleadings and and must be complete in itself without reference to those prior pleadings. The text of the complaint must allege sufficient facts to support each claim without reference to any extraneous document. Any exhibits must be identified by number in the text of the amended complaint and must be attached to the complaint. All claims alleged in an amended complaint must arise from the facts alleged in the original complaint. Walton may add additional defendants provided that the claims against the new parties arise from the acts and omissions set forth in the original complaint. Each claim for relief must be stated in a separate count and must

identify each defendant sued in that count.  If Walton fails to file an amended complaint within the time specified, the Court will assess a strike pursuant to 28 U.S.C. § 1915(g) and enter judgment.

Walton is reminded that he must promptly notify the Clerk of any change of address or extended absence.  Failure to comply with these requirements, or any other order of the Court, may result in the dismissal of this case without further notice.

IT IS SO ORDERED.

 s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE