UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| JEFFERY WALTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 14-1299-JDT-egb |
| | ) | |
| JENATTA JONES, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER DISMISSING CLAIMS,
CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
AND NOTIFYING PLAINTIFF OF APPELLATE FILING FEE

On October 29, 2014, Plaintiff Jeffery Walton ("Walton"), an inmate at the Whiteville Correctional Facility ("WCF") in Whiteville, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 accompanied by a motion to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) In an order issued October 30, 2014, the Court granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 4.) On February 5, 2016, the Court dismissed Walton's complaint and granted leave to amend. (ECF No. 8.) On February 29, 2016, the Court granted Walton's motion for extension of time to file amended complaint. (ECF Nos. 9 & 10.) On March 7, 2016, Walton filed an Amended Complaint. (ECF No. 11.) The Clerk shall record the Defendants as WCF Librarian Yolanda Gray and WCF Education Principal Dana Bell.[1] Defendants are sued in their individual and official capacities.

---

[1]Walton did not include previous defendants: WCF Jobs Coordinator Jenatta Jones;

I. The Complaint

Walton claims that the Defendant Gray violated his First Amendment right to access the courts and to petition the government for redress of grievances, and that Defendant Gray's denial of library access was in retaliation for Walton's filing of grievances. (Amended Compl. at 4 & 8, ECF No. 11.)

On February 4, 2014, Walton informed Defendant Gray that he had a 60-day deadline in which to file an appeal to the Tennessee Supreme Court. (*Id.*) From February 6 to February 10, 2014, Walton did not receive any passes to the library or to the legal aids. (*Id.* at 5.) On February 11, 2014, Walton informed Defendant Gray that he needed additional library time and then filed a grievance against Defendant Gray for denying him access to the library. (*Id. see also* Exhibits 4.1 & 4.5, ECF No 11-5.) Walton contends that from February 11, 2014 until Walton's application to the Supreme Court was due, Defendant Gray, in retaliation for Walton's grievance, only issued Walton passes during his regular work hours, when he could not go to the library, and would only let him see the legal aide for fifteen minutes at a time, if at all. (Amended Compl. at 5 & 8, ECF No. 11.) As a result, Walton was only able to go to the library ten days of the sixty days he was given to file to the Tennessee Supreme Court.. (Amended Compl. at 5 & 8, ECF No. 11.) Walton alleges that Defendant Gray's retaliatory behavior caused him to miss the sixty day deadline to file a Rule 11 application to the Tennessee Supreme Court. (*Id.* at 6 & 8.)

---

WCF Business Manager First Name Unknown ("FNU") Johnson; WCF Assistant Warden of Programs FNU Devers and WCF Grievance Sergeant ("Sgt.") F. Johnson in the amended complaint.

Walton provided that in his appeal to the Tennessee Court of Criminal Appeals, No. W2012-01609-CCA-MR3_CD, he argued that there was insufficient evidence at trial to convict him. (*Id. see also* http://www.tncourts.gov/sites/default/files/waltonjeffreyopn.pdf.) Walton contended that the "intermediate court's decision was in error, and there was: (1) the need to secure uniformity of decision; and (2) the need for exercise of the Supreme Court's supervisory authority." (Amended Compl. at 6.) Thus, Walton continues, the Tennessee Supreme Court would have, "granted permission to appeal . . . and would have reversed Plaintiff's convictions and judgements and dismissed this criminal case with prejudice." (*Id.*) Further, because the appeal never went to the Tennessee Supreme Court, Walton was prevented from any appeal to the Federal Supreme court because he did not exhaust his remedies within the state of Tennessee. (*Id.* at 7.)

Additionally, Walton alleged Defendant Bell also engaged in retaliatory behavior against him. (*Id.* at 9.) Walton contends that Defendant Bell and Gray are good friends. (*Id.*) On March 20, 2014, after filing his March 20, 2014, grievances against Defendant Gray, Defendant Bell requested a job dismissal for Walton. (*Id.*) Walton filed a grievance contending that this job dismissal was retaliation by Defendants Bell and Gray and was administered and/or approved by all named Defendants. (*Id.*; *see also* Ex. 5.1 & 5.2, ECF No. 11-6.)

After Walton was dismissed from his position, no other skilled position supervisor would hire him. (Amended Compl. at 10.) Walton was eventually placed in an unskilled position which cut his pay in half. (*Id.*) Walton contends that this deterred him from filing additional grievances. (*Id.*) Additionally, Walton contends that the diminished earnings hampered his ability to pay his attorney fees and court costs increasing his overall debt as well as prevented him from hiring a private investigator to assist in his post-conviction issues. (*Id*)

Walton alleges that Defendant Bell directly retaliated against him for filing grievances against Defendant Gray and, that as supervisor for Defendant Gray, Defendant Bell also allowed for the denial of access to the law library. (*Id.*) Walton contends that his loss of job and inability to hire a competent attorney or private investigator has resulted in his suffering more that 'de minimus' mental anguish, worry, stress, and pain and suffering." (*Id.*at 11.*)*

Walton seeks compensatory and punitive damages. (*Id.* at 12.)

## II. Analysis

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

>    (1)    is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
>    (2)    seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the court applies the standards under Federal Rules of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681) (alteration in original). "[P]leadings that . . . are no more than conclusions . . . are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at

4

555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally. Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted." *Hill*, 630 F.3d at 470 (citing *Neitzke v. Williams*, 490 U.S. 319, 325, 328-29 (1989)).

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief. Statutes allowing a complaint to be dismissed as frivolous give "judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327, 109 S. Ct. 1827 (interpreting 28 U.S.C. § 1915). Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, *Iqbal*, 129 S. Ct. at 1949-50, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness. *Neitzke*, 490 U.S. at 327-28, 109 S. Ct. 1827.

*Id.* at 471.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants and prisoners are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, No. 09-2259, 2011 WL 285251, at *5 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)) (alteration in original); *Payne v. Sec'y of Treas.*, 73 F.

App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

Walton filed his 12-page, handwritten amended complaint under 42 U.S.C. § 1983. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

Walton's allegations against Defendants in their official capacity are properly asserted against their employer, Corrections Corporation of America (CCA). The amended complaint does not assert a valid claim against CCA. "A private corporation that performs the traditional state function of operating a prison acts under color of state law for purposes of § 1983." *Thomas v. Coble*, 55 F. App'x 748, 748 (6th Cir. 2003) (citing *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)); *see also Parsons v. Caruso*, 491 F. App'x 597, 609 (6th Cir. 2012) (corporation that provides medical care to prisoners can be sued under § 1983). The Sixth Circuit has applied the standards for assessing municipal liability to claims against private corporations that operate prisons or provide medical care to prisoners. *Thomas*, 55 F. App'x at 748-49; *Street*, 102 F.3d at 817-18; *Johnson v. Corr. Corp. of Am.*, 26 F. App'x 386, 388 (6th Cir. 2001). CCA "cannot be held liable under a theory of respondeat superior." *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011). Instead, to prevail on a § 1983 claim against CCA, Plaintiff "must show that a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation" of his rights. *Id.* The amended complaint does not allege that Walton suffered any injury because of an unconstitutional policy or custom of CCA.

The remainder of Walton's amended complaint attempts to eradicate the details missing from his original complaint; however, Walton conclusory language does not create sufficient factual basis to support his claims.

Walton alleges that because he was not allowed adequate access to the law library, he was denied permission to appeal by the Tennessee Supreme Court. In his amended complaint, Walton contends that the Tennessee Supreme Court was likely to grant his appeal because he is able to show that there was insufficient evidence at his trial for conviction. (Compl. at 6, ECF No. 11.)) The Court construes these allegations as a court access claim. It is true that a prisoner

7

has the right, protected by the First Amendment, "to petition the Government for a redress of grievances." The scope of this right in relation to prisoners has been enunciated in *Bounds v. Smith*, 430 U.S. 817 (1977), and its progeny. According to that body of caselaw, the scope of this right for prisoners is limited. The Sixth Circuit has previously held that the right of access to the courts requires affirmative assistance for inmates "only in the preparation of legal papers in cases involving constitutional rights and other civil rights actions related to their incarceration." *Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992) (emphasis added). *See also John L. v. Adams*, 969 F.2d 228, 236 (6th Cir. 1992).

This view was subsequently adopted by the United States Supreme Court:

> *Boun*ds does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U.S. 343, 355 (1996). The Court declared that no claim exists under *Bounds* without an actual injury. Inmates must have sought "to file *nonfrivolous* legal claims challenging their convictions or conditions of confinement." *Id*. at 356 (emphasis added). No actual injury occurs without a showing that such a claim "has been lost or rejected, or that the presentation of such a claim is currently being prevented." *Id*. As recognized even before *Lewis*, "[w]e are concerned with a right of access to the courts, not necessarily to a prison law library." *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985).

Walton includes details concerning the legal claim for which he sought review, including the fact that the Tennessee Court of Criminal Appeals did not find the factual evidence to support overturning his conviction. Walton has not established that his appeal has any greater chance of

success with the Tennessee Supreme Court. Moreover, the Tennessee Supreme Court's decision to grant permission to appeal in non-capital cases is entirely discretionary. Pursuant to Rule 11(a) of the Tennessee Rules of Appellate Procedure:

> [T]he following, while neither controlling nor fully measuring the court's discretion, indicate the character of reasons that will be considered: (1) the need to secure uniformity of decision, (2) the need to secure settlement of important questions of law, (3) the need to secure settlement of questions of public interest, and (4) the need for the exercise of the Supreme Court's supervisory authority.

Because Walton has not shown any likelihood that the Tennessee Supreme Court would have granted permission to appeal, he has not sufficiently alleged that a nonfrivolous legal claim was lost or rejected. *See Shehee v. Grimes*, 39 F. App'x 127, 129 (6th Cir. 2002) (affirming dismissal of claim arising from interference with prisoner's petition for a writ of certiorari).

Walton has alleged that the Defendants retaliated against him for the filing of grievances. "Retaliation on the basis of a prisoner's exercise of his First Amendment rights violates the Constitution." *Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005).

> A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc); *see also Scott v. Churchill*, 377 F.3d 565, 569 (6th Cir. 2004) (same); *Smith v. Campbell*, 250 F.3d 1032, 1036 (6th Cir. 2001) (same). "If the plaintiff is able to make such a showing, the defendant then has the burden of showing that the same action would have been taken even absent the plaintiff's protected conduct." *Smith*, 250 F.3d at 1037.

The filing of a non-frivolous grievance is protected conduct under the First Amendment. *Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007); *Herron v. Harrison*, 203 F.3d 410, 415 (6th

Cir. 2000) ("An inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf."). A grievance is frivolous if it complains of conduct that is not legally actionable. *Herron*, 203 F.3d at 415 ("Herron's pursuit of legal claims against [prison] officials . . . was protected conduct only to the extent that the underlying claims had merit."); *see Jackson v. Kronberg*, 111 F. App'x 815, 819 (6th Cir. 2004) (grievance that corrections officer has a spider-web tattoo that serves as an "Aryan Nation symbol" not grievable so the filing of the grievance is not protected conduct); *Ziegler v. State of Mich.*, 90 F. App'x 808, 810 (6th Cir. 2004); *Henley v. Pitcher*, 20 F. App'x 396, 397 (6th Cir. 2001); *cf. Smith v. Craven*, 61 F. App'x 159, 162 (6th Cir. 2003) (inmate did not engage in protected conduct by litigating loss of property claim against prison in state court because such a claim is not encompassed within an inmate's First Amendment rights).

Walton's grievance against Gray complained that in retaliation for his grievances, Defendant Gray denied him access to the law library and to legal aides. (Amended Compl. at 8, ECF No. 11.) As previously discussed, Walton has no cognizable claim against Defendants Gray or Bell for denial of access to the courts. Further, Walton does not have a claim against Defendant Bell for the dismissal from his skilled position. "[T]he Constitution does not create a property or liberty interest in prison employment [and] any such interest must be created by state law by 'language of an unmistakably mandatory character.'" *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (quoting *Ingram v. Papalia*, 804 F.2d 595, 596-97 (10th Cir. 1986)) (additional citations omitted). The Sixth Circuit has consistently rejected claims by prisoners based on their loss of, or failure to be assigned to, a prison job. *See, e.g., Shields v. Campbell*, No. 03-5635, 2003 WL 22905312, at *1 (6th Cir. Nov. 26, 2003); *Carter v. TDOC*, 69 F. App'x 678, 680 (6th Cir. 2003); *Jewell v. Leroux*, 20 F. App'x 375, 377 (6th Cir. 2001); *Dellis v.*

*Corrections Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987). Because there is no property right in a specific job, likewise there is no property right to a specific wage for work performed. Rather, prison administrators may assign inmates jobs and wages at their discretion. *Altizer v. Paderick*, 569 F.2d 812 (4th Cir. 1978); *Anderson v. Hascall*, 566 F. Supp. 1492, 1494 (D. Minn. 1983); *Chapman v. Plageman*, 417 F. Supp. 906, 908 (W.D. Va. 1976).

Because Walton's claims under the grievances are not "legally actionable," he does not have a First Amendment claim for retaliation against either Defendant.

For all of the foregoing reasons, Walton's complaint is subject to dismissal in its entirety for failure to state a claim on which relief can be granted.

### III. Standard for Leave to Amend

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, No. 12-1403, 2013 WL 646489, at *1 (1st Cir. Feb. 22, 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Brown*, 2013 WL 646489, at *1; *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every *sua sponte* dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile, then a *sua sponte* dismissal may stand."); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) ("*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would

be inequitable or futile"); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). In this case, because the deficiencies in Walton's amended complaint cannot be cured, leave to amend is not warranted.

IV. Appeal Issues

Pursuant to 28 U.S.C. §1915(a)(3), the Court must also consider whether an appeal by Walton in this case would be taken in good faith. The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). The test for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any issue that is not frivolous. *Id.* It would be inconsistent for a district court to determine that an amended complaint should be dismissed prior to service on the Defendants, but has sufficient merit to support an appeal *in forma pauperis*. *See Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith.

V. Conclusion

The Court DISMISSES Walton's amended complaint for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Leave to amend is DENIED because the deficiencies in Walton's complaint cannot be cured. It is also CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Walton would not be taken in good faith.

The Court must also address the assessment of the $505 appellate filing fee if Walton nevertheless appeals the dismissal of this case. A certification that an appeal is not taken in good

faith does not affect an indigent prisoner plaintiff's ability to take advantage of the installment procedures contained in § 1915(b). *See McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997), *partially overruled on other grounds by LaFountain*, 716 F.3d at 951. *McGore* sets out specific procedures for implementing the PLRA, 28 U.S.C. § 1915(a)-(b). Therefore, Walton is instructed that if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in *McGore* and § 1915(a)(2) by filing an updated *in forma pauperis* affidavit and a current, certified copy of his inmate trust account for the six months immediately preceding the filing of the notice of appeal.

For analysis under 28 U.S.C. § 1915(g) of future filings, if any, by Walton, this is the first of one of his cases as frivolous or for failure to state a claim. This "strike" shall take effect when judgment is entered. *Coleman v. Tollefson*, 135 S. Ct. 1759, 1763-64 (2015).

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

**s/James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE